**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIN CORWIN, *et al.*, | ) | CASE NO. 5:26-cv-107 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| DEBOIS INC. d/b/a DBS FINANCIAL CO., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiffs Erin Corwin and Joseph Corwin bring several causes of action against defendant

Debois, Inc., for alleged violations of the Federal Truth in Lending Act ("TILA") and Regulation

Z, the Ohio Consumer Sales Practices Act ("OCSPA"), the Fair Credit Reporting Act ("FCRA"),

and breach of contract. (Doc. No. 1 (Complaint).) Defendant filed the pending Motion to Compel

Arbitration and Stay All Proceedings. (Doc. No. 6.) Shortly thereafter, the parties jointly filed a

proposed stipulation to stay the case pending arbitration. (Doc. No. 7.)

For the reasons set forth below, the motion is **DENIED** in part and **GRANTED** in part.

I.      **BACKGROUND**

Plaintiffs  Erin  Corwin  and  Joseph  Corwin  are  consumers  who  entered  into  a  retail

installment auto finance transaction with DBS Financial Co. (Doc. No. 1 ¶ 1.) Defendant Debois,

Inc., d/b/a/ DBS Financial Co., is the Ohio registrant and owner of DBS Financial Co. (*Id.* ¶ 3.)

Defendant does business in Ohio, including in Summit County, through DBS Financial. (*Id.*) DBS

Financial is an Ohio finance company that "services and enforces retail installment auto contracts"

from its office in Akron, Ohio and regularly transacts business in this state. (*Id.* ¶ 2.)

On October 15, 2021, plaintiffs entered into a retail sales installment contract for the purchase of a vehicle to be financed by DBS Financial. (*Id.* ¶ 8; Doc. No. 6-1 (Motor Vehicle Retail Installment Contract).) Plaintiffs allege that, over the ensuing years since contract formation, DBS Financial and plaintiffs modified the loan terms for the vehicle several times. (Doc. No. 1 ¶¶ 9–10.) The most recent modification that DBS Financial drafted and provided to plaintiffs was incomplete—it was missing page 3—and did not attach all required disclosures. (*Id.* ¶ 11.)

In October of 2025, plaintiffs began disputing the terms of the loan with DBS Financial. (*See id.* ¶ 11–17.) They state that they do not have access to prior versions of their loan agreement and asked DBS Financial provide copies of them. (*Id.* ¶ 11–13.) After the October 2025 payment deadline passed, DBS Financial is alleged to have threatened plaintiffs that their loan had "no grace period" and that they were "at risk" of having their vehicle repossessed. (*Id.* ¶ 12.) Plaintiffs responded by requesting their original loan contract, all deferment and modification agreements, and a complete payment history. (*Id.* ¶ 12.) DBS Financial "refused or failed to provide these core documents." (*Id.*) The only information DBS Financial allegedly provided was "an internal coded ledger that omitted approximately two years of payment data and lacked a clear application of payments to principal, interest, or fees." (*Id.* ¶ 14.) Back-and-forth email discussions ensued for several weeks until "emails to DBS's account manager were returned undeliverable with a 'recipient not found' message." (*Id.* ¶¶ 13–16.)

Plaintiffs aver that DBS Financial's failure to provide the requested information prevented plaintiffs from verifying the terms being enforced. (*Id.* ¶ 19.) They claim that a discrepancy as to their loan payments exists on their credit report. (*Id.* ¶ 17.) DBS Financial is accused of having imposed fees and practices without clear disclosure, made threats to plaintiffs, and furnished credit

information inconsistent with the parties' payment terms. (*Id.* ¶ 19.) Plaintiffs claim that these factual allegations point to DBS Financial's violations of provisions of the TILA and Regulation Z (*id.* ¶¶ 20–32), the OCSPA (*id.* ¶¶ 33–67), the FCRA (*id.* ¶¶ 68–84), and breach of the loan agreement (*id.* ¶ 85–105).

On January 15, 2026, plaintiffs filed the above-captioned case in this Court. (Doc. No. 1.) On April 2, 2026, defendant filed the pending motion to compel arbitration and stay all proceedings. (Doc. No. 6.) Defendant's motion included a copy of an arbitration provision which they claim is part of the Motor Vehicle Retail Installment Contract. (*Id.* at 2–3.)[1] This provision provides that: "All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall, at the election of either party, be resolved by binding arbitration[.]" (*Id.* at 2; *see also* Doc. No. 6-1, at 4 (arbitration clause in loan contract).) The clause further states: "This arbitration agreement is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1, *et seq.*" (Doc. No. 6, at 2.) Plaintiffs' signatures are clearly affixed below the arbitration clause. (Doc. No. 6-1, at 4.)

Defendant also included a copy of an arbitration clause contained within plaintiffs' vehicle purchase agreement. (Doc. No. 6, at 3–4.) That clause provides:

> By entering into this Agreement to Arbitrate ("Agreement"), Customer(s) and Dealership, including any Assignee, (collectively referred to as "the Parties"), agree, except as otherwise provided in this Agreement, to settle by binding arbitration any dispute between them regarding: (1) the purchase by Customer(s) of the above-referenced Vehicle; (2) any products and services purchased in conjunction with the Vehicle; (3) any financing obtained in connection with the purchase transaction; and/or (4) any dispute with respect to the existence, scope or validity of this Agreement. Matters that the Parties agree will be arbitrated include,

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

but are not limited to, disputes related to the Retail Purchase Agreement and any documents incorporated therein by reference (whether such reference is made in the Agreement or the document itself), ***the application for and terms of financing for the purchase transaction, the Retail Installment Contract***, any alleged promises, representations and/or warranties made to or relied upon by the Parties with respect to the transaction, and ***any alleged unfair, deceptive, or unconscionable acts or practices***.

(*Id.* at 3 (emphasis added); *see* Doc. No. 6-1, at 18.) Plaintiffs' signatures are also clearly affixed to this arbitration agreement. (Doc. No. 6-1, at 18.)

Shortly after defendant's motion, the parties filed a joint proposed stipulation. (Doc. No. 7.) That stipulation states that "Plaintiffs Erin Corwin and Joseph Corwin and Defendant Debois, Inc. hereby stipulate that this matter is hereby stayed pending arbitration." (*Id.* at 1.)

## II.    LAW AND ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, manifests "a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *see Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (recognizing that § 2 of the FAA "'embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts'" (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006))). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration[.]" *Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3–4). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478, 144 S. Ct. 1173, 218 L. Ed. 2d 494 (2024). Unless there is a separate reason for dismissal (*e.g.*, lack of jurisdiction),

courts do not have discretion to dismiss suits on the basis that all the claims are subject to arbitration. *Id.* at 475–76.

When all parties consent to arbitration, district courts do not need to conduct the familiar four prong test for compelling an unwilling party into arbitration. *See, e.g.*, *Zube v. Ecolab, Inc.*, No. 22-cv-13111, 2023 WL 2652781, at *1–2 (E.D. Mich. Mar. 27, 2023) (granting an unopposed motion to compel arbitration after conducting a simplified analysis). Instead, courts need only confirm that "the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the dispute at issue falls within the scope of that agreement." *Id*. (citing *Mazera v. Varsity Ford Mgmt. Svs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009)).

Here, the jointly filed stipulation is a clear expression of both parties' agreement that arbitration of plaintiffs' claims is appropriate. (*See generally* Doc. No. 7.) The parties do not dispute the enforceability of the arbitration provision. (*Id.*) Upon review of the claims, the Court finds that the dispute at issue falls within the scope of the two arbitration agreements. Accordingly, § 3 of the FAA compels the Court to stay the proceedings to allow the parties to arbitrate the dispute. *See Smith*, 601 U.S. at 478.

**III.    CONCLUSION**

As the parties have jointly consented to proceed to bilateral arbitration before a neutral arbitrator in accordance with the parties' agreements, defendant's motion to compel that plaintiff arbitrate (Doc. No. 6) is **DENIED AS MOOT**. Defendant's motion requesting to stay this case pending arbitration (*id.*) is **GRANTED**. The Court hereby **STAYS** and administratively **CLOSES** this case pending the conclusion of arbitration. The parties are **ORDERED** to notify the Court of the outcome of the arbitration proceedings within 14 days of their conclusion and whether any further proceedings are necessary in this case.

**IT IS SO ORDERED**.

Dated: May 13, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**